JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
Liza Regina Mousios

## DEFENDANTS
Nestle Purina Petcare Company, Inc.

**(b)** County of Residence of First Listed Plaintiff _____
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Thomas P. Wagner, Esquire
Robert W. Stanko, Esquire
Marshall Dennehey Warner Coleman & Goggin
2000 Market Street
Philadelphia, PA 19103
215-575-2600

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- [ ] 1  U.S. Government Plaintiff
- [ ] 2  U.S. Government Defendant
- [ ] 3  Federal Question (U.S. Government Not a Party)
- [X] 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only) and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [X] 1 | [ ] 1 | Incorporated or Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated and Principal Place of Business In Another State | [ ] 5 | [X] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

### CONTRACT
- [ ] 110 Insurance
- [ ] 120 Marine
- [ ] 130 Miller Act
- [ ] 140 Negotiable Instrument
- [ ] 150 Recovery of Overpayment & Enforcement of Judgment
- [ ] 151 Medicare Act
- [ ] 152 Recovery of Defaulted Student Loans (Excl. Veterans)
- [ ] 153 Recovery of Overpayment of Veteran's Benefits
- [ ] 160 Stockholders' Suits
- [ ] 190 Other Contract
- [ ] 195 Contract Product Liability
- [ ] 196 Franchise

### REAL PROPERTY
- [ ] 210 Land Condemnation
- [ ] 220 Foreclosure
- [ ] 230 Rent Lease & Ejectment
- [ ] 240 Torts to Land
- [ ] 245 Tort Product Liability
- [ ] 290 All Other Real Property

### TORTS

**PERSONAL INJURY**
- [ ] 310 Airplane
- [ ] 315 Airplane Product Liability
- [ ] 320 Assault, Libel & Slander
- [ ] 330 Federal Employers' Liability
- [ ] 340 Marine
- [ ] 345 Marine Product Liability
- [ ] 350 Motor Vehicle
- [ ] 355 Motor Vehicle Product Liability
- [ ] 360 Other Personal Injury

**PERSONAL INJURY**
- [ ] 362 Personal Injury— Med. Malpractice
- [X] 365 Personal Injury— Product Liability
- [ ] 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
- [ ] 370 Other Fraud
- [ ] 371 Truth in Lending
- [ ] 380 Other Personal Property Damage
- [ ] 385 Property Damage Product Liability

### CIVIL RIGHTS
- [ ] 441 Voting
- [ ] 442 Employment
- [ ] 443 Housing/ Accommodations
- [ ] 444 Welfare
- [ ] 445 Amer. w/Disabilities - Employment
- [ ] 446 Amer. w/Disabilities - Other
- [ ] 440 Other Civil Rights

### PRISONER PETITIONS
- [ ] 510 Motions to Vacate Sentence
- **Habeas Corpus:**
- [ ] 530 General
- [ ] 535 Death Penalty
- [ ] 540 Mandamus & Other
- [ ] 550 Civil Rights
- [ ] 555 Prison Condition

### FORFEITURE/PENALTY
- [ ] 610 Agriculture
- [ ] 620 Other Food & Drug
- [ ] 625 Drug Related Seizure of Property 21 USC 881
- [ ] 630 Liquor Laws
- [ ] 640 R.R. & Truck
- [ ] 650 Airline Regs.
- [ ] 660 Occupational Safety/Health
- [ ] 690 Other

### LABOR
- [ ] 710 Fair Labor Standards Act
- [ ] 720 Labor/Mgmt. Relations
- [ ] 730 Labor/Mgmt.Reporting & Disclosure Act
- [ ] 740 Railway Labor Act
- [ ] 790 Other Labor Litigation
- [ ] 791 Empl. Ret. Inc. Security Act

### IMMIGRATION
- [ ] 462 Naturalization Application
- [ ] 463 Habeas Corpus – Alien Detainee
- [ ] 465 Other Immigration Actions

### BANKRUPTCY
- [ ] 422 Appeal 28 USC 158
- [ ] 423 Withdrawal 28 USC 157

### PROPERTY RIGHTS
- [ ] 820 Copyrights
- [ ] 830 Patent
- [ ] 840 Trademark

### SOCIAL SECURITY
- [ ] 861 HIA (1395ff)
- [ ] 862 Black Lung (923)
- [ ] 863 DIWC/DIWW (405(g))
- [ ] 864 SSID Title XVI
- [ ] 865 RSI (405(g))

### FEDERAL TAX SUITS
- [ ] 870 Taxes (U.S. Plaintiff or Defendant)
- [ ] 871 IRS—Third Party 26 USC 7609

### OTHER STATUTES
- [ ] 400 State Reapportionment
- [ ] 410 Antitrust
- [ ] 430 Banks and Banking
- [ ] 450 Commerce
- [ ] 460 Deportation
- [ ] 470 Racketeer Influenced and Corrupt Organizations
- [ ] 480 Consumer Credit
- [ ] 490 Cable/Sat TV
- [ ] 810 Selective Service
- [ ] 850 Securities/Commodities/ Exchange
- [ ] 875 Customer Challenge 12 USC 3410
- [ ] 890 Other Statutory Actions
- [ ] 891 Agricultural Acts
- [ ] 892 Economic Stabilization Act
- [ ] 893 Environmental Matters
- [ ] 894 Energy Allocation Act
- [ ] 895 Freedom of Information Act
- [ ] 900Appeal of Fee Determination Under Equal Access to Justice
- [ ] 950 Constitutionality of State Statutes

## V. ORIGIN (Place an "X" in One Box Only)
- [ ] 1 Original Proceeding
- [X] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from another district (specify)
- [ ] 6 Multidistrict Litigation
- [ ] 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. §1332, 1441.
Brief description of cause:
Plaintiff asserts claims of negligence and strict product liability relating to the death of her dog and the sickness of several others.

## VII. REQUESTED IN COMPLAINT:
- [ ] CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
- DEMAND in excess of $50,000
- CHECK YES only if demanded in complaint:
- JURY DEMAND: [X] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY
(See instructions): JUDGE _____ DOCKET NUMBER _____

DATE
February     , 2015

SIGNATURE OF ATTORNEY OF RECORD

## FOR OFFICE USE ONLY

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

American LegalNet, Inc.
www.FormsWorkflow.com

# UNITED STATES DISTRICT COURT

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA – DESIGNATION FORM** to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

| | |
|---|---|
| Address of Plaintiff | P.O. Box 116, Revere, PA 18953 |
| Address of Defendant | Checkerboard Square, St. Louis, Missouri 63164 |
| Place of Accident, Incident or Transaction | |
| Wind Gap, Pennsylvania | *(Use Reverse Side for Additional Space)* |

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?    Yes ☒  No ☐

(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))

Does this case involve multidistrict litigation possibilities?    Yes ☐  No ☒

*RELATED CASE, IF ANY:*

| | | |
|---|---|---|
| Case Number: | Judge | Date Terminated |

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?    Yes ☐  No ☒

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?    Yes ☐  No ☒

3. Does this case involve the validity or infringement of a patent already in suit or any earlier number case pending or within one year previously terminated action in this court?    Yes ☐  No ☒

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?    Yes ☐  No ☒

CIVIL: (Place ✓ in ONE CATEGORY ONLY)

A. *Federal Question Cases:*

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
    (Please specify)

B. *Diversity Jurisdiction Cases*

1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify) Premises Liability
7. ☒ Products Liability
8. ☐ Products Liability – Asbestos
9. ☐ All other Diversity Cases
    (Please specify)

## ARBITRATION CERTIFICATION
*(Check appropriate Category)*

I, _____, counsel of record do hereby certify:

☐ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

☐ Relief other than monetary damages is sought.

| | | |
|---|---|---|
| DATE | Attorney-at-Law | Attorney I.D. # |

**NOTE:** A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

| | | |
|---|---|---|
| DATE  2/27/15 | Attorney-at-Law | 27145 |
| | | Attorney I.D. # |

CIV. 609 (6/08)

# UNITED STATES DISTRICT COURT

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA – DESIGNATION FORM** to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff      P.O. Box 116, Revere, PA 18953

Address of Defendant      Checkerboard Square, St. Louis, Missouri 63164

Place of Accident, Incident or Transaction
     Wind Gap, Pennsylvania            *(Use Reverse Side for Additional Space)*

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?

(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))      Yes ☒   No ☐

Does this case involve multidistrict litigation possibilities?      Yes ☐   No ☒
*RELATED CASE, IF ANY:*

Case Number: _____     Judge _____     Date Terminated _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?
     Yes ☐   No ☒

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?
     Yes ☐   No ☒

3. Does this case involve the validity or infringement of a patent already in suit or any earlier number case pending or within one year previously terminated action in this court?
     Yes ☐   No ☒

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?
     Yes ☐   No ☒

CIVIL: (Place ✓ in ONE CATEGORY ONLY)

| A. | *Federal Question Cases:* | | B. | *Diversity Jurisdiction Cases* | |
|---|---|---|---|---|---|
| 1. | ☐ | Indemnity Contract, Marine Contract, and All Other Contracts | 1. | ☐ | Insurance Contract and Other Contracts |
| 2. | ☐ | FELA | 2. | ☐ | Airplane Personal Injury |
| 3. | ☐ | Jones Act-Personal Injury | 3. | ☐ | Assault, Defamation |
| 4. | ☐ | Antitrust | 4. | ☐ | Marine Personal Injury |
| 5. | ☐ | Patent | 5. | ☐ | Motor Vehicle Personal Injury |
| 6. | ☐ | Labor-Management Relations | 6. | ☐ | Other Personal Injury (Please specify) Premises Liability |
| 7. | ☐ | Civil Rights | 7. | ☒ | Products Liability |
| 8. | ☐ | Habeas Corpus | 8. | ☐ | Products Liability – Asbestos |
| 9. | ☐ | Securities Act(s) Cases | 9. | ☐ | All other Diversity Cases |
| 10. | ☐ | Social Security Review Cases | | | (Please specify) |
| 11. | ☐ | All other Federal Question Cases | | | |
| | | (Please specify) | | | |

## ARBITRATION CERTIFICATION
*(Check appropriate Category)*

I, _____, counsel of record do hereby certify:

☐ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

☐ Relief other than monetary damages is sought.

DATE _____     _____     _____
                                 Attorney-at-Law                     Attorney I.D. #
**NOTE:** A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE   2/27/15      _____      27145
                                 Attorney-at-Law                     Attorney I.D. #

CIV. 609 (6/08)

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

## CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| Liza Regina Mousios | : | **CIVIL ACTION** |
| | : | |
| v. | : | |
| | : | |
| Nestle Purina Petcare Company, Inc. | : | **NO.** |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a case management track designation form specifying the track to which that defendant believes the case should be assigned.

## SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus-Cases brought under 28 U.S.C. §2241through §2255. ( )

(b) Social Security-Cases requesting review of a decision of the Secretary of Health
and Human Services denying plaintiff Social Security Benefits. ( )

(c) Arbitration-Cases require to be designated for arbitration under Local Civil Rule 53.2. ( )

(d) Asbestos-Cases involving claims for personal injury or property damage from
exposure to asbestos. ( )

(e) Special Management-Cases that do not fall into tracks (a) through (d) that are
commonly referred to as complex and that need special or intense management by
the court. (See reverse side of this form for a detailed explanation of special
management cases.) ( )

(f) Standard Management--Cases that do not fall into any one of the other tracks. (X)

| | | |
|---|---|---|
| February 27, 2015 | _[signature]_ | Defendant |
| Date | Attorney-at-law | Attorney for |

| | | |
|---|---|---|
| 215-575-4562 | 215-575-0856 | tpwagner@mdwcg.com |
| Telephone | FAX Number | E-Mail Address |

(Civ. 660) 10/02

**Civil Justice Expense and Delay Reduction Plan**
**Section 1:03 - Assignment to a Management Track**

      (a)     The clerk of court will assign cases to tracks (a) through (d) based on the initial pleading.

      (b)     In all cases not appropriate for assignment by the clerk of court to tracks (a) through (d), the plaintiff shall submit to the clerk of court and serve with the complaint on all defendants a case management track designation form specifying that the plaintiff believes the case requires Standard Management of Special Management. In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a case management track designation form specifying the track to which that defendant believes the case should be assigned.

      (c)     The court may, on its own initiative or upon the request of any party, change the track assignment of any case at any time.

      (d)     Nothing in this Plan is intended to abrogate of limit a judicial officer's authority in any case pending before that judicial officer, to direct pretrial and trial proceedings that are more stringent than those of the Plan and that are designed to accomplish cost and delay reduction.

      (e)     Nothing in this Plan is intended to supersede Local Civil Rules 3 or 7, or the procedure for random assignment of Habeas Corpus and Social Security cases referred to magistrate judges of the court.

## SPECIAL MANAGEMENT CASE ASSIGNMENTS
### (See § 1.02(e) Management Track Definitions of the
### Civil Justice Expense and Delay Reduction Plan)

      Special management cases will usually include that class of cases commonly referred to as "complex litigation" as that term has been used in the Manuals for Complex Litigation. The first manual was prepared in 1969 and the Manual for Complex Litigation Second, MCL 2d was prepared in 1985. This term is intended to include cases that present unusual problems and require extraordinary treatment. See §0.1 of the first manual. Cases may require special or intense management by the court due to one or more of the following factors: (1) large number of parties; (2) large number of claims or defenses; (3) complex factual issues; (4) large volume of evidence; (5) problems locating or preserving evidence; (6) extensive discovery; (7) exceptionally long time needed to prepare for disposition; (8) decision needed within an exceptionally short time; and (9) need to decide preliminary issues before final disposition. It may include two or more related cases. Complex litigation typically includes such as antitrust cases; cases involving a large number of parties or an unincorporated association of large membership; cases involving requests for injunctive relief affecting the operation of large business entities; patent cases; copyright and trademark cases; common disaster cases such as those arising from aircraft crashes or marine disasters; actions brought by individual stockholders; stockholder's derivative and stockholder's representative actions; class actions of potential class actions; and other civil (and criminal) cases involving unusual multiplicity or complexity of factual issues. See §0.22 of the first Manual for Complex Litigation and Manual for Complex Litigation Second, Chapter 33.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LIZA REGINA MOUSIOS | : | CIVIL ACTION - LAW |
| | : | |
| Plaintiff | : | |
| | : | |
| v. | : | NO. |
| | : | |
| NESTLE PURINA PETCARE | : | |
| COMPANY, INC. | : | |
| | : | <u>JURY TRIAL DEMANDED</u> |
| Defendant | : | |

### DISCLOSURE STATEMENT FORM

Please check one box:

☐  The nongovernmental corporate party, _____, in the above listed civil action does not have any parent corporation and publicly held corporation that owns 10% or more of its stock.

☒  The nongovernmental corporate party, <u>Nestle Purina PetCare Company, Inc.</u>, in the above listed civil action has the following parent corporation(s) and publicly held corporation(s) that owns 10% or more of its stock:

   <u>Nestle Holdings, Inc.</u>

Date: <u>February 27, 2015</u>          Signature: _____
                                        Counsel for Nestle Purina PetCare
                                        Company, Inc.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LIZA REGINA MOUSIOS | : | CIVIL ACTION - LAW |
| Plaintiff | : | |
| | : | |
| v. | : | NO. |
| | : | |
| NESTLE PURINA PETCARE | : | |
| COMPANY, INC. | : | |
| | : | |
| Defendant | : | JURY TRIAL DEMANDED |

## NOTICE OF REMOVAL

### TO THE HONORABLE JUDGES OF THE UNITED STATES DISTRICT
### COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA:

Defendant, Nestle Purina PetCare Company, Inc. by and through its counsel, Marshall Dennehey Warner Coleman & Goggin, pursuant to 28 U.S.C. §§ 1331, 1441 and 1446, files this Notice of Removal of a certain action pending in the Northampton County Court of Common Pleas, (hereinafter "State Court"), and in support thereof states as follows:

1. Nestle Purina PetCare Company, Inc. (hereinafter "Nestle") is named as a defendant in the action entitled *Liza R. Mousios v. Nestle Purina PetCare Company, Inc.*, pending in State Court. A true and correct copy of Plaintiff's Civil Action Complaint is attached hereto as Exhibit "A."

2. Nestle was served with the Civil Action Complaint on January 28, 2015.

3. The foregoing papers are, upon information and belief, the only process, pleadings and orders in the State Court served upon Nestle.

4. Plaintiff, Liza Regina Mousios, is a citizen and resident of the Commonwealth of Pennsylvania. *See* Exhibit A, at ¶1.

5.  On the date of the alleged incident, and at all times relevant to the allegations set forth in Plaintiff's Complaint, Nestle was a corporation incorporated under the laws of the State of Missouri, with its principal place of business located at Checkerboard Square, St. Louis, Missouri 63164.

6.  Nestle desires to remove this action to this Court and submits this Notice along with the exhibits, in accordance with 28 U.S.C. §§1332, 1441, and 1446.

7.  Pursuant to 28 U.S.C. §1446(b)(3), Nestle filed the instant Notice of Removal within thirty days of service of Plaintiff's Complaint.

8.  This action is one in which this Honorable Court has original jurisdiction under the provisions of 28 U.S.C. §1441(a), in that it is a civil action wherein Plaintiff has claimed damages in controversy exceeding the sum or value of $75,000.00, exclusive of interest and costs, and is between citizens of different states.

9.  Diversity of citizenship exists between Plaintiff, who is a citizen and resident of the Commonwealth of Pennsylvania, and Defendant, a corporation formed under the laws of the State of Missouri, with its principal place of business located at Checkerboard Square, St. Louis, Missouri 63164.

10. Plaintiff, Liza Regina Mousios, asserts claims of negligence and strict liability relating to the death of her dog and the sickness of several others. Plaintiff contends that her dogs fell ill after consuming Defendant's dog food. *See* Exhibit A.

11. The amount in controversy, exclusive of interest and costs, exceeds $75,000.00. Plaintiff seeks in excess of $50,000.00 for injuries to her valuable dogs, as well as damages in excess of $50,000.00 for her own pain and suffering. Plaintiff further contends that she is entitled to additional damages for lost puppy sales and stud fees in excess of $15,000.00, and in excess of

$7,500.00 in veterinary expenses. *See* Exhibit A. In light of the foregoing, the amount in controversy, exclusive of interest and costs, exceeds $75,000.00. *See Nelson v. Keefer*, 451 F.2d 289, 294 (3d Cir. 1971).

12. Written notice of the filing of this Notice of Removal will be provided to Plaintiff, and a copy of this Notice of Removal and supporting papers will be filed with the Clerk of the State Court, as provided by 28 U.S.C. §1446(d).

13. Venue is properly laid in this District because a substantial part of the events or omissions giving rise to Plaintiff's claim occurred in this District. *See* 28 U.S.C. §1391(a)(2). *See* Exhibit A.

**WHEREFORE**, Defendant prays that the above described action pending against it in the State Court be removed to this Court.

> **MARSHALL DENNEHEY WARNER**
> **COLEMAN & GOGGIN**
>
> By: _____
> Thomas P. Wagner, Esquire
> Robert W. Stanko, Esquire
> 2000 Market Street
> Philadelphia, PA 19103
> 215-575-2600
> Attorney for Defendant,
> Nestle Purina Petcare Company, Inc.

DATE: <u>February 27, 2015</u>

COMMONWEALTH OF PENNSYLVANIA   :
                                       :     SS

COUNTY OF PHILADELPHIA            :

## **A F F I D A V I T**

**THOMAS P. WAGNER, ESQUIRE,** being duly sworn according to law deposes and states that the facts set forth in the foregoing Notice of Removal are true and correct to the best of his knowledge, information and belief.

_____
**THOMAS P. WAGNER, ESQUIRE**

SWORN TO AND SUBSCRIBED
BEFORE ME THIS _____ DAY
OF _____, 2015


_____
     NOTARY PUBLIC

## CERTIFICATE OF SERVICE

I do hereby certify that a true and correct copy of the foregoing Notice of Removal was

sent by First Class mail, postage prepaid, to the following counsel of record:

> Ms. Liza Mousios
> P.O. Box 116
> Revere, PA 18953

> **MARSHALL DENNEHEY WARNER**
> **COLEMAN & GOGGIN**

> BY: _____
> Thomas P. Wagner, Esquire
> Robert W. Stanko, Esquire
> Amy L. Recupero, Esquire
> Attorney for Defendant,
> Nestle Purina Petcare Company, Inc.

Dated: 2/27/15

# EXHIBIT "A"

# IN THE COURT OF COMMON PLEAS OF
# NORTHAMPTON COUNTY, PENNSYLVANIA
# CIVIL DIVISION

Liza Regina Mowsios  Plaintiff )
)
)
vs. )
)
Nestle' Purina )
)  **DOCKET NO.**
Defendant )  CV2014-
12065

*(FILED stamp: 2015 JAN 28 PM 3: 08, COURT OF COMMON PLEAS CIVIL DIVISION NORTHAMPTON COUNTY, PA)*

## NOTICE TO DEFEND AND CLIAM RIGHTS

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take prompt action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so, the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by plaintiff. You may lose, money, property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW. THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER.

IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.

**LAWYER REFERAL SERVICE**
**155 SOUTH NINTH STREET**
**EASTON, PA 18042**
**(610)258-6333**

NOTICE:

You, Nestle Purina PetCare, have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so, the case may proceed without you and a judgment may be entered against you without further notice for any money claimed in the complaint.

Plaintiff,

Liza Regina Mousios

Liza Regina Mousios
PO BOX 116
Revere PA 18953

In the Court of Common Pleas
Northampton County, Pennsylvania
Civil Division
NO.CV-2014-12065

Plaintiff
Vs.
Nestle Purina "PetCare" Company, Inc
Legal Department
Checkerboard Square
St. Louis, MO 63164
Defendant: Timothy J McMahon, Esq.

CIVIL COMPLAINT

1) Plaintiff, Liza Regina Mousios, is a resident of the Commonwealth of Pennsylvania.
2) Nestle Purina, herein referred to as Purina, is a conglomerate doing business by selling its dog food in the Commonwealth of Pennsylvania.
3) Between December 31, 2012 and January 3, 2013, Plaintiff, Liza Regina Mousios, purchased Beneful Dog Food from Giant Food Store on Male Rd Wind Gap, PA, where Giant was having a "special" on said dog food.
4) Ms. Mousios resided with thirteen dogs: Silver Buck, Carmen, Viola, Quincy, Timmy, Socrates, Millie, Mars, Victor, Crescent, Caesar, Bruno, and Smokey Robinson.
5) On Plaintiff's birthday, January 4, 2013, all nine dogs whom ate Beneful Dog Food became ill with vomiting and diarrhea: Silver Buck, Carmen, Quincy, Socrates, Millie, Victor, Caesar, Bruno, and Smokey Robinson.
6) Four dogs (Crescent, Viola, Timmy and Mars) refused to eat the Beneful Dog Food. They were fed "Taste of the Wild".
7) The four dogs who refused to eat Beneful Dog Food developed no symptoms and remained healthy
8) On January 8, 2013, Champion Silver Buck, a pre-Beneful robustly healthy four-year old Italian Greyhound, was rushed to a local veterinarian, Dr. Leck DVM in Wind Gap, PA. Dr. Leck examined Champion Silver Buck or "Bucky" and felt his condition was grave.
9) Dr. Leck DVM recommended immediate 24 hour care hospitalization.
10) On the same day, January 8, 2013, Ch. Silver Buck was hospitalized at Harmony Animal Hospital in Harmony, NJ.
11) While in Harmony Animal Hospital, Bucky tested positive for Chlostridium.
12) Chlostridium is a dangerous bacteria in the Botulism family.

13) On the Consumer Affairs website, other veterinarians ascribed dangerous bacterial overgrowth in Beneful Dog Food as causing deaths in their canine patients.

14) Ch. Silver Buck, "Bucky", continued to decline.

15) When Plaintiff visited him in the hospital, he was in a state of great marasmus and did not recognize her.

16) On January 10, 2013, Ms. Mousios received a call from Harmony Animal Hospital that Bucky was in increasing hypothermia and had hours to live.

17) The Harmony Animal Hospital veterinarian said that if there was any chance of saving Bucky's life, he should be transferred to a specialty hospital.

18) The other dogs whom had eaten Beneful Dog Food were ill also.

19) The four dogs who did refused to eat Beneful Dog Food were fed Taste of the Wild and remained healthy

20) Of two littermates who were housed together, Viola, a then three year old Italian Greyhound, refused to eat Beneful, was fed Taste of the Wild and remained healthy. Her sister, then three year old Millie who was formerly vibrantly healthy with normal gastrointestinal function, became ill and has had gastrointestinal abnormalities to this day.

21) Most Noble Caesar became severely dehydrated [according to some veterinarians on complaint sites, dehydration from vomiting and diarrhea is a source of animal death from Beneful] from uncontrolled vomiting and diarrhea. Ms. Mousios took Caesar, picked up Bucky from Harmony Animal Hospital and rushed both dogs, who were vomiting and defecating uncontrollably in the car, to Metropolitan Veterinary Hospital, in a suburb of Philadelphia.

22) Most Nobel Caesar stayed for a number of hours. He received intravenous fluids and other medications as he was severely dehydrated from vomiting profusely and diarrhea.

23) Champion Silver Buck was admitted as in patient to Metropolitan Veterinary Hospital. He was shockingly emaciated and critically ill. Dr. Buckman, Veterinarian at Metropolitan Hospital, wrote "the dogs were normal until fed from a new bag of dog food". He urged me to call Purina.

24) Dr. Fran Hecksher-Wilson DVM stated adamantly that the dogs' severe illnesses were caused by toxic dog food and that there were other cases of canine severe illness and death from Beneful dog food.

25) Dr. Heckscher-Wilson, who assumed Bucky's care, put her findings imputing the dogs illnesses to Beneful Dog Food in writing.

26) Dr. Heckscher- Wilson, continued to care for Bucky as inpatient in the hospital until he was released on the night of January 13, 2013. He was still ill and very emaciated. He still had difficulty eating and still had diarrhea. He had spent nearly 6 days in the hospital.

27) Bucky's laboratory results echoed those of the other 803 complaints on the Consumer Affairs website referencing canine illnesses and deaths from Beneful: loss of protein/albumin, anal abnormalities, and often death and renal failure with abnormal creatinine, elevated liver, and gallbladder enzymes with accompanying inflammation, gastro-intestinal distress with uncontrollable diarrhea, violent vomiting, severe anemia, inability to eat, extreme dehydration and severe emaciation.

28) Thousands of dogs have died but Purina continues to cling to its willful negligence and corporate greed in favor of killing and causing suffering and continued illness in dogs with its pernicious,

toxic Beneful Dog Food.  Purina also has complete moral disregard for the suffering, bereaved owners.

29) In addition to the 803 complaints on Consumer Affairs website recounting canine illnesses and death from Beneful, there are 3137 signatures on the petition to remove Beneful Dog Food from the market.

30) All dogs whom ate Beneful were still sick.

31) Ms. Mousios, Plaintiff, had incurred thousands of dollars in veterinary bills, heeding to borrow thousands of dollars to try to save her dogs' lives.

32) Ms. Mousios desperately wishes to hospitalize in-patient some of her seriously ill dogs but she was out of money from the exorbitant expenses from Bucky and Caesar's veterinary expenses and Bucky's two inpatient hospitalizations.

33) Although they may have incurred organ damage, and Dr. Zaccheo at Warren Animal Hospital said "who knows if they could have problems a year from now", two of the dogs appeared to at least outwardly recover from the toxic Beneful by Ms. Mousios home care.

34) Since the other dogs were still very sick and Ms. Mousios was out of money from all the other veterinary expenses, the rest of the poisoned dogs were treated as outpatients.

35) In the same month the dogs started vomiting and diarrhea, January 2013, the other sick dogs started expensive outpatient treatment

36) Ch. Silver Buck (Bucky), Caesar, Quincy, Smokey Robinson, Bruno, Millie, and Best in Show Champion Carmen, were treated as outpatients because in-patient care was financially unfeasible.

37) Dr. Zaccheo at Warren Animal Hospital commented that he had never previously seen Quincy nor Smokey Robinson.

38) The reason Dr. Zaccheo had never seen neither Quincy nor Smokey Robinson is that prior to eating Beneful, Quincy and Smokey Robinson had enjoyed vibrant health.

39) Bucky, Caesar, Carmen, Bruno, and Millie likewise were in excellent health prior to poison Beneful.

40) Bucky's lab reports: emaciation, positive for Chlostridium [in Botulism family], creatine decreased, albumin decreased alt increased, alkphos increased, k decreased, cl decreased, emaciated, will continue treatment for diarrhea.

41) Dr. Zaccheo writes… "Dogs in household have been treated at emergency hospital for vomiting and diarrhea.  Dogs in household have been fed Beneful dry dog food prior to onset of vomiting and diarrhea… was at Harmony Animal Hospital and Metropolitan Veterinary Hospital… for vomiting and diarrhea, after eating Beneful Dog Food.

42) Dr. Zaccheo commented that Quincy's and Smokey Robinson's anemia was "really bad". "Owner reports since feeding Beneful, Quincy has been having multiple problems".

43) Bruno, who had been vomiting and defecating diarrhea and blood, had been in radiant health prior to eating Beneful Dog Food.  Due to the frightening exorbitant veterinary expenses, Bruno was treated at home and with Dr. Discafani.

44) Both Bruno and Caesar have failed to gain proper weight and appear skeletal.

45) Ms. Mousios has before Beneful and after Beneful photographs.

46) Both Bruno and Caesar were in race training prior to being poisoned by Beneful.

64) As Quincy and Ms. Mousios were inextricably mutually attached, Ms. Mousios declined to sell Quincy to Mr. Bennett.

65) Quincy del Calcione became sick with vomiting and diarrhea and lassitude after eating Beneful in January 2013.

66) Quincy was housed with Crescent who refused to eat Beneful and was fed Taste of the Wild.

67) Therefore, Quincy, a tiny thirteen inch male, in eating his food and Crescent's food he refused, ingested a double dose of poison Beneful. Crescent even at an elderly age remains healthy.

68) As Plaintiff was out of money and could not borrow any more money, Bucky's prohibitively expensive two hospitalizations, Quincy began treatments with Dr. Zaccheo and Dr. Discafani in January 2013.

69) Whereas Quincy had been a happy, robustly healthy happy dog, his condition became grave and debilitating. In January 2013, Dr. Discafani said he did not think Quincy would last a week.

70) Quincy and the other dogs whom had eaten Beneful required round the clock care by Ms. Mousios of mediations, IV fluids administered twice daily, and twice daily Jin Shin Jyutsu treatments for the sickness. There was hardly any time for anything else except acute time consuming dogs' care.

71) Ms. Mousios has eight and one-half advanced master years training in Jin Shin Jyutsu which is related to Acupuncture. She studied with the only living master in the world and is scholarly in the technique of treatment and oriental pulse diagnosis. Ms. Mousios' pulse diagnoses of the sick dogs unequivocally indicating poisoning.

72) Quincy would cry out in pain upon eating. He was on fluids twice daily. He woke up at night and cried out in pain during the day. Ms. Mousios treated him with Jin Shin Jyutsu for two hours per day in addition to treating Bucky, Caesar, and the other sick dogs, Quincy had previously passed his genetic tests and was to be bred to Millie but this was seriously out of the question.

73) Quincy was extremely weak and lost his ability to walk. Since exercise seemed to mitigate his pain somewhat, he swam for exercise and then rested on a pink float with Ms. Mousios in the pool.

74) Quincy was so dependent physically on Ms. Mousios for care and pain relief that he had to go everywhere with her without exception. Even when Ms. Mousios had two concerts of her original compositions, Quincy rested under the gowns in the ladies' dressing room. Ms. Mousios gave him the command to be quiet and he complied.

75) Concomitant with other dogs on the Consumer Affairs and other websites, Quincy's anemia [all Plaintiff's poisoned dogs became anemic] became so severe, that he required a blood transfusion.

76) Dr. Sandy Orben DVM, of Quakertown Veterinary Hospital, examined Quincy del Calcione prior to blood transfusion, read and reread the veterinary records and concluded that Quincy was suffering from toxicity and organ damage from having eaten Beneful. She wrote: "Poisoned by Beneful food, very painful. Needs a blood transfusion. Loses weight every day."

77) Quakertown Veterinary Hospital had previous experience with dogs treated by them who died from having eaten Beneful Dog Food.

78) Quakertown Veterinary Hospital treated three dogs poisoned by Beneful Dog Food who had previously been healthy.

79) Deborah Hands of Barto, Pennsylvania fed her three dogs Beneful Dog Food, where upon all three became gravely ill

80) Consistent with Ms. Mousios' dogs' illnesses and death from Beneful and the thousands of other illnesses/deaths from Beneful, Deborah Hands' dogs developed severe kidney problems, dehydration, and gastrointestinal/ vomiting and distress.

81) Two of Ms. Hands' dogs, a female Sheltie (Shetland Sheepdog) and a female Pomeranian suffered and died from renal failure. The third dog, a Pomeranian, like Ms. Mousios' dogs have never recovered and are still in very fragile health.

82) Quakertown Veterinary Hospital and Doctor Sandy Orben DVM and Doctor Rose Newton DVM sent Purina complaints with the log number of the bag, affirming the sicknesses and deaths of Ms. Hands' dogs.

83) Purina avariciously and insultingly offered Ms. Hands three thousand dollars.

84) In 2014, Dee Shoble of Van Etten, NY inquired as to using Champion Silver Buck as stud for her Best in Show and Number 3 in the United States Italian Greyhound Zenyatta. Although this would have generated a stud fee for Ms. Mousios and it is rare to find a high-quality, petite size-reducing male, Ms. Mousios could not consider this due to Bucky's fragile health from Beneful and resulting underweight condition.

85) In the 2007 case Denise Bufa vs. Con Edison, attorney Pete Gleason successfully argued the case in the negligent death of Ms. Bufa's Italian Mastiff. Attorney Gleason's legal theory propounded that if a woman is unmarried and childless, a dog is tantamount to a child and not just property.

86) Ms. Mousios is unmarried and childless and her dogs are her children. She is suing for pain and suffering with the nightmare of round-the-clock care, illness, anguish, fear, bereavement, loss, and death.

87) Ms. Mousios' Beneful-caused veterinary expenses exceed $7500.00. Since the dogs who have not recovered, these expenses continue to mount.

88) In 2012, Dennis Adkins successfully sued Purina in a class action suit in the death of his Pomeranian. The settlement was $6,500,000.00 [SIX MILLION FIVE HUNDRED THOUSAND].

89) This suit is the only reason Nestle Purina Petcare removed its toxic, murderous product from the shelves. Otherwise, it would have continued to kill and sicken dogs in the name of venal corruption and greed.

90) Most damning against Nestle Purina is the fact that as early as January 17, 2012, the "Grass Roots Movement" was continuing to push for investigation against Purina and exhorting the FDA to take action. In January 2012, the "Grass Roots Movement" wrote, "If you believe your pet became ill or worse, died, from eating Purina Beneful, prompt them to take action so this can no longer be ignored."

91) On March 28, 2013, the highly regarded publication "The Dogington Post" wrote "Purina's Beneful line of dog foods, claiming the food has directly resulted in the and/or deaths of hundreds of beloved pets… consumers are reporting a wide range of illnesses ranging from vomiting and diarrhea to bacterial infections, liver and kidney failure, and even death from eating the popular kibble". "Instead of addressing the concerns and questions from hundreds of … angry consumers through their Beneful Facebook page, the dog food giant has instead beefed

up their social media moderation, deleting comments, banning consumers that post complaints or photos of their beloved pets..."

92) Similarly http://www.dogster.com/forums/Food_and_Nutrition/thread/750397 wrote "Beneful dog food may be killing dogs".

93) In like fashion, Godlike Productions wrote "Is Purina's Beneful killing and sickening dogs?"

94) Another site is entitled change.org/p stop-purina-from-making-the-beneful-food-line. These multiple sites recount a nimiety of heartbreaking illnesses and deaths from pernicious, toxic Beneful and Purina's cover ups to keep it on the market.

95) In an implicating interview on January 31, 2013 on YouTube, the Nestle-Purina representative first denied that any ingredients came from China. [Reference. Dennis Adkins $6,500,000 lawsuit regarding ingredients from China causing deaths]. Upon pressure from the interviewer, the Purina representative finally capitulated and admitted that some ingredients in Beneful came from China.

96) The Beneful representative, under pressure from the interviewer in the same interview of January 31,2013, further admitted that:

    a.   There had not been clinical testing of Beneful and,

    b.   There had not been independent clinical testing of Beneful.

97) When in May 2014, Purina requested a sample of Beneful from Ms. Mousios,

    a.   They did not have the sample independently clinically tested and,

    b.   They did a perfunctory non-independent test, conveniently omitting any testing for bacteria [Bucky had tested positive for Chlostridium, which is in the Botulism family] and citing such banal observations such as there was no infestation. Presumably, this means no weevils in the food, which any non-brain-dead layperson could perceive.

98) Tiny Quincy had a necropsy performed upon his death of his pylorus and gallbladder which showed severe inflammation of both pylorus and gallbladder.

99) When Ms. Mousios had first called Purina at the recommendation of Metropolitan Veterinary hospital, she was told by a Purina employee that the complaints regarding toxic Beneful were "Internet Crap".

100)     Later in 2014, Purina demanded that Plaintiff jump through hoops; Ms. Mousios complied and supplied them with aforementioned poison food sample, breeding/ litter records, pedigrees of the rarified bloodlines, show awards so numerous it was a challenge to encompass them in the camera's sight, and veterinary/hospitalization records and necropsy records.

101)     Purina refused to compensate Ms. Mousios, ascribing the illnesses/death, now seven-thousand five hundred dollars in veterinary bills ($7500.00), death and ongoing health problems to the dogs catching a communicable infection.

102)     This is an evil, mendacious, venal unctuous, spurious and easily refutable argument.

103)     Quincy was housed with Crescent who refused to eat Beneful and was fed Taste of the Wild. Quincy, therefore at double the poison Beneful.  Crescent did not get sick and remains healthy even although elderly. Quincy died.

104)     Viola was housed with Millie and Champion Socrates.  Viola refused to eat Beneful, was fed Taste of the Wild and remained healthy.  Millie and Socrates both ate Beneful and both became sick.  These four were in a separate room from the others.

105)     Tim was housed next to Caesar. Tim refused to eat Beneful, was fed Taste of the Wild, and did not get sick. Caesar ate Beneful and became very sick.

106)     Mars was housed next to Millie and Socrates who ate Beneful and became sick and Viola who did not eat Beneful and did not get sick. Mars, a finicky dog, would not eat Beneful and did not get sick. He was housed next to dogs whom did eat Beneful and did get sick.

107)     Smokey Robinson, Champion Best in Show, and Carmen became sick from eating Beneful. Smokey became dangerously dehydrated and anemic and along with the other dogs, required an iron supplement, vitamin B-12, IV fluids, and other expensive medications. They were housed in a separate part of the house.

108)     Champion Victor ate Beneful and became sick. He was housed next to Quincy who ate Beneful and died and Crescent who would not eat Beneful and remained healthy.

109)     Champion Silver Buck and Bruno were housed in a separate room from the other dogs. They ate Beneful and both got sick and Silver Buck nearly died.

110)     They poisonings took place in the freezing cold of winter. The dogs were not going places or going to shows as it was too cold.

111)     As previously stated, the dogs were in four different rooms, where some dogs never even saw each other.

112)     This was a large house. The dogs went out three separate entrances and exits, some never having contact with the others.

113)     The dogs went from three separate doors into three distinct separate fenced-in yards. One yard was on the side of the large house. One yard was in the back of the house and one yard was in the front of the house. Again, some dogs never even saw each other.

114)     Since it was winter and the resident groundhog was hibernating, the dogs were not in contact with it.

115)     The only common denominator, along with the nimiety of other dogs' illnesses and deaths, was that all dogs whom ate Beneful became sick or died and all dogs who refused to eat it remained healthy.

116)     This lawsuit demands monetary damages from Nestle Purina, herein identified as Purina.


COUNT I : STRICT LIABILITY 402A

1)  Plaintiff avers that Defendant is strictly liable due to manufacturing and selling the defective product, Beneful Dog Food including but not limited to the following:
    a.  Toxicity of Beneful Dog Food caused severe illnesses in Plaintiff's dogs
    b.  Toxicity in Beneful Dog Food caused continuing health problems in Plaintiff's dogs
    c.  Toxicity in Beneful Dog Food caused death of Plaintiff's dog

2)  WHEREFORE, Plaintiff, Liza Mousios, requests judgment in her favor and against Defendant, Nestle Purina, in an amount in excess of fifty thousand dollars ($50,000) together with veterinary bills, interest, costs, and other damages the court deems appropriate.

COUNT II: PAIN AND SUFFERING

1) Plaintiff avers that the extreme illnesses of her dogs, the round-the-clock care with fluids, veterinary care, medicines and the worry about the dogs whose health was compromised from poisonous Beneful Dog Food has been a deep source of pain and suffering to hear them scream in pain, watch their health deteriorate, and in Quincy's case, watch him suffer and die as a result of the pernicious Beneful Dog Food.

2) It has already been stated that the Plaintiff, an unmarried, childless woman, conceives of her dogs as children, furthermore, Plaintiff's "labor of love", her ability and desire to save from extinction the rarified Del Calcione bloodline from the Villa of Leonardo da Vinci has been extirpated by the death of Quincy del Calcione and the compromised health of Champion Silver Buck, Millie, Bruno, and Caesar abrogating their ability to be bred.

3) WHEREFORE, Plaintiff, Liza Mousios, requests judgment in her favor and against Nestle Purina in an amount in excess of fifty thousand dollars ($50,000) together with interest, cost and other damages the court deems appropriate.

COUNT III: LOSS OF INCOME

1) The illnesses and death of the aforementioned dogs from Beneful Dog Food have prevented Plaintiff, Liza Mousios, from receiving financial remuneration in the form of puppy sales and stud fees.

2) WHEREFORE, Plaintiff, Liza Mousios, requests judgment in her favor and against Nestle Purina in an amount in excess of fifteen thousand dollars ($15,000) together with interest, cost and other damages the court deems appropriate.

COUNT IV: NEGLIGENCE

1) Plaintiff, Liza Mousios, avers that Defendant, Nestle Purina, was negligent both in general and in the following particulars:

   a. Lack of quality control

   b. Admitted failure to have independent clinical analysis of Beneful Dog Food done.

   c. Abject denial of thousands of consumer complaints of canine illnesses and deaths [to the point of willful negligence] in favor of corporate corruption and greed in refusing to remove Beneful Dog Food from the market resulting in the illnesses and death of Plaintiff's dogs

*Plaintiff*

*Jan 28 2015   Liza Regina Mousios*

---